**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------X

Quartix Finance Inc., : Case No.: 1:24-cv-01283

Plaintiff :

vs :

MXM NV Inc. and Adde Issagholi, :

Defendants :

-----------------------------------------------------X

**COMPLAINT**

Plaintiff, Quartix Finance Inc. ("Plaintiff" or "Quartix"), by its attorneys, Lazarus & Lazarus, P.C., as and for its Complaint against the Defendants, MXM NV Inc. ("MXM" or "Customer") and Adde Issagholi ("Issagholi") (MXM and Issagholi, jointly "Defendants"), respectfully alleges and sets forth the following:

1. Quartix brings this action against Defendants for $762,429.90, plus interest against the advances made, and reasonable attorneys' fees and expenses, under the subject Agreement (defined below) and Guaranty (defined below), respectively. Plaintiff made advances to MXM to finance MXM's payments of certain of its suppliers' invoices. MXM unconditionally promised to repay the amounts advanced by Plaintiff on the maturity dates chosen by MXM on the Platform (defined below). Issagholi signed a personal guaranty to guaranty repayment of the amounts owed to Plaintiff by MXM. Defendants, however, have failed and refused to repay Plaintiff as required under the Agreement and the Guaranty.

**JURISDICTION AND VENUE**

2. Quartix is, and all times herein was, a corporation organized under the laws of the State of Delaware with its principal place of business located in North Carolina.

3. Upon information and belief, MXM is, and at all times herein was, a corporation organized and under the laws of the State of Nevada with its principal place of business located at 4501 Mitchell Street, North Las Vegas, Nevada 89081.

4. Issagholi is an individual who is a citizen of the State of Nevada and, pursuant to his driver's license, resides at 11386 Villa Bellagio Drive, Las Vegas, Nevada 89141.

5. Issagholi is the Guarantor under the Agreement.

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants have complete diversity of citizenship.

7. This Court has subject matter jurisdiction over this action because this Complaint meets the $75,000.00 amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a).

8. Venue properly lies in this judicial district because Defendants consented to submit to the personal jurisdiction of the Courts "*of the State of New York sitting in New York, New York, of the United States District Court sitting in the Borough of Manhattan, New York*". *See* Agreement ¶ 19.

9. Quartix maintains a cloud-based supply chain finance platform that, among other things, provides for the electronic exchange of information regarding invoices of suppliers of participating customers and the submission of notices relating to approvals for payment, offers to purchase and sell, and transfers of supplier invoices (the "Platform"). In particular, but without limitation, the Platform allows participating customers to request

that Quartix make advances to them to allow them to pay their invoices based upon the invoice information they supply to Quartix. Customers to whom Quartix makes advances, such as MXM, unconditionally agree to repay those advances on the maturity dates specified on the Platform.

10. MCM executed and delivered to Plaintiff a Customer Services Agreement, dated September 7, 2023, a copy of which is annexed hereto as **Exhibit A** (the "Agreement")[1].

11. The Agreement sets forth certain terms and conditions allowing MXM to offer certain of its suppliers the ability to use the Platform to sell receivables due from MXM and/or request that Quartix pay invoices on behalf of MXM or make advances to MXM to pay invoices from MXM's suppliers (the "Advances").

12. Paragraph 4 of the Agreement sets forth:

> *"Services Available to Customer. The Customer may at any time use the Platform to take any of the following actions that have been authorized by Quartix and made available to the Customer on the Platform: (i) post Invoices, (ii) approve posted Invoices for payment in whole or in part, (iii) request that the maturity date of any Approved Invoice be extended, (iv) request Advances to pay Approved Invoices, (v) instruct Quartix to pay Approved Invoices, and (vi) employ any other services then available to it on the Platform."*

13. Pursuant to Article 8 of the Agreement,

> *"Advances.*
> *(a) Quartix may, at the Customer's request but in Quartix's sole discretion, (i) pay Approved Invoices specified by the Customer or (ii) make advances to the Customer to pay such Approved Invoices (each such payment or advance herein called an "Advance" and the date on which Quartix makes such payment or advance herein called the "Borrowing Date" of such Advance).*

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Agreement.

> *(b) Payments of Approved Invoices may be made by Quartix to the relevant Suppliers using such deposit accounts and payment systems as Quartix may determine in its sole discretion. Advances to the Customer to pay Approved Invoices may be made by Quartix by wire transfer or automated clearinghouse credit in accordance with the [terms set forth in the Agreement]".*
>
> *(c) Any request that Quartix make an Advance (a "Borrowing Request") shall be made by the Customer on the Platform, in accordance with the Platform Procedures, and shall (i) identify the Approved Invoices the Customer wishes to pay with the proceeds of the requested Advance, (ii) state the amount of the requested Advance (provided that no Advance shall exceed the Approved Amount of the Approved Invoices identified in such Borrowing Request), (iii) accept the interest rate and Maturity Date quoted on the Platform for the requested Advance, and (iv) provide such other information as the Platform may require."*

*See* Agreement ¶8 (a)-(c).

14. In connection with the repayment of the Advances by MXM to Quartix, the Agreement further sets forth:

> *"(d) Each Advance shall be due and payable on demand and, if no demand is made prior thereto, on the Maturity Date selected by the Customer for such Advance in accordance with the Platform Procedures.* ***The Customer acknowledges and agrees that it shall have an absolute, irrevocable, legal, valid and binding obligation to repay each Advance to Quartix on demand or, in the absence of a demand, on its Maturity Date, without any defense, offset or counterclaim of any kind.***
>
> *(e) The outstanding principal amount of each Advance shall bear interest from the date it is made until it is paid in full at the rate quoted on the Platform and accepted by the Customer when it submitted the Borrowing Request for such Advance. Interest on each Advance shall be payable on the date Quartix demands payment thereof or, in the absence of such demand, on the Maturity Date of such Advance.*
>
> *(f) Notwithstanding the foregoing, in the event that Customer fails to make any payment in response of principal or interest on any Advance on the date it is due, it shall pay to Quartix, promptly upon demand, interest on the past due amount from its due date*

> *until it is paid in full at the default rate specified on the Platform (which rate shall apply after as well as before judgment).”*

*See* Agreement ¶¶8 (d)-(f).

15. Paragraph 9(a) of the Agreements, sets forth in pertinent part:

> *“The Customer shall pay each Purchased Invoice, and shall repay each Advance, to Quartix, in the case of Purchased Invoices in the currency specified in such invoices and, in the case of Advances, in the currency in which the Advances were made and, in each case, in immediately available funds in accordance with the payment instructions set forth [in the Agreement].”*

16. Paragraph 12 of the Agreement sets forth:

> *“Events of Default. If the Customer (i) fails to make any payment, or to cause payment to be made, when due under this Agreement and such failure is not remedied within 3 Business Days, (ii) fails to make payment on any other indebtedness when due at maturity, by acceleration or otherwise, (iii) breaches any representation, warranty, covenant or any other obligation hereunder, (iv) becomes insolvent, or ceases operations, or (v) any bankruptcy, reorganization or insolvency proceedings are instituted by or against the Customer (each of the foregoing, an “Event of Default”), then all amounts payable pursuant to this Agreement shall, upon notice from Quartix, become immediately due and payable; provided however if a default occurs under clause (v) of this Section, such amounts shall become immediately due and payable without notice or any further action by Quartix. Upon the occurrence of an Event of Default, all amounts past due hereunder (including any accelerated amounts) shall, if Quartix so chooses, accrue interest at a rate equal to the default rate specified on the Platform until paid in full (which rate shall apply after as well as before judgment) and (ii) the Customer shall cooperate with Quartix in remedying such default including executing such additional instruments and documents as Quartix may request.”*

17. Pursuant to the Agreement the parties, irrevocably and unconditionally, to the fullest extent permitted by applicable law, agreed to the application of New York law, and submitted to the jurisdiction of the Courts of the City, County and State of New York. *See* Agreement ¶ 18.

18. The parties further agreed at paragraph 19 of the Agreement to irrevocably and unconditionally waive, to the fullest extent permitted by applicable law, any objection that they may have to the laying of venue of any action or proceeding arising out of or relating to the Agreement in any Court in the City, County and State of New York. *See* Agreement ¶ 19.

19. The Agreement further provided that MXM shall provide to Quartix that certain Guaranty duly executed by Issagholi, which such Guaranty was provided by Isaagholi. *See* Agreement ¶ 26.

**THE GUARANTY**

20. "To induce Quartix to enter into the [Agreement], give the Customer access to the Platform and provide the services and accommodations specified therein" and pursuant to paragraph 26 of the Agreement, Issagholi executed and delivered to Quartix that certain Guaranty, annexed to the Agreement at page 11 thereof (the "Guaranty"). *See* Guaranty.

21. Pursuant to the Guaranty, Issagholi:

> *"irrevocably and unconditionally guarantees to Quartix, as a primary obligor and not merely as a surety, payment in full when due, whether by acceleration or otherwise, of any and all obligations, liabilities and indebtedness of the Customer to Quartix now or hereafter arising under or pursuant to said Customer Services Agreement (the "Obligations")."*

**DEFENDANTS' DEFAULT**

22. Pursuant to the Agreement and Guaranty, Quartix made the Advances to or for the benefit of MXM, as guaranteed by Issagholi.

23. Quartix has performed all parts of the Agreement to be performed on Quartix's behalf.

24. MXM has failed to repay the Advances in accordance with Agreement and, as of January 22, 2024, there remains due and owing to Plaintiff from MXM a total of $762,429.90 (the "Indebtedness"), which such Indebtedness includes the principal amount due of $721,485.00[2] and interest due of $40,944.90.

25. Pursuant to the Guaranty, Issagholi, individually, remains unconditionally and irrevocably liable to Quartix for payment in full of the Indebtedness.

26. The maturity dates by which the repayment of the Advances were due by MXM to Quartix have passed and the amounts due to Quartix remain unpaid and, as such, MXM has breached its obligations due to Quartix under and pursuant to the Agreement (the "Default").

27. Pursuant to paragraph 12 of the Agreement, upon the occurrence of a Default, all amounts past due shall accrue interest at a rate equal to the default rate specified on the Platform until paid in full (which rate shall apply after as well as before judgment). *See* Agreement ¶ 12.

28. On January 26, 2024, Quartix, through its attorneys, sent that certain demand notice to Defendants by Federal Express delivery and electronic mail, notifying Defendants of Defendants' Default under the Agreement, totaling $762,429.90, as of January 22, 2024. *See* **Exhibit B** annexed hereto and made a part hereof (hereafter, the "Default Notice").

29. The Default Notice provided for a cure date by on or before three business days from the date of the Default Notice (i.e. January 31st, 2024) (hereafter, the "Cure Date").

[2] Quartix advanced monies to or for the benefit of MXM on September 11, September 15 and September 25, 2023, the total of which was $721,485.00.

30. Notwithstanding Defendants' receipt of the Default Notice, Defendants failed to respond to same by on or before the Cure Date.

31. On February 5, 2024, Defendants acknowledged receipt of the Default Notice, but provided no formal or substantive response to same.

32. Defendants have failed and refused to pay the Indebtedness, the total of which remains due and owing, plus interests, costs and attorneys' fees.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT – THE AGREEMENT**

33. Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as though fully set forth at length herein.

34. The Agreement constitutes a valid and binding contract between Quartix and MXM.

35. MXM breached the Agreement by failing and refusing to pay Quartix the Indebtedness.

36. As of January 22, 2024, MXM failed and refused to pay $762,429.90 in connection with all amounts due to Quartix under and pursuant to the terms and conditions of the Agreement.

37. Quartix has fully performed its obligations due and owing under the Agreement.

38. As a direct result of MXM's breach of the Agreement, Quartix has suffered damages in an amount equal to $762,429.90, plus interest, costs and attorneys' fees.

39. By reason of the aforesaid, Quartix is entitled to a judgment against MXM in an amount equal to $762,429.90, plus interest, costs and attorneys' fees.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT – THE GUARANTY**

40. Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as though fully set forth at length herein.

41. The Guaranty entered into by Issagholi in connection with the Agreement constitutes a valid and binding contract between Issagholi, as guarantor, and Quartix.

42. As of the date hereof, MXM has failed and refused to pay the Indebtedness due to Quartix.

43. Issagholi, pursuant to the terms of the Guaraty, is liable to Quartix in an amount equal to the Indebtedness currently owed by MXM to Quartix.

44. Issagholi has breached the Guaranty by failing and refusing the Indebtedness.

45. As a direct result of Issagholi's breach of his Guaranty, Quartix has suffered damages in an amount equal to $762,429.90, plus interest, costs and attorneys' fees.

46. By reason of the aforesaid, Quartix is entitled to a judgment against Issagholi in an amount equal to $762,429.90, plus interest, costs and attorneys' fees.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**

47. Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as though fully set forth at length herein.

48. By its conduct described above, Defendants have received a benefit with respect to the Advances provided to or for the benefit of MXM.

49. Defendants have been unjustly enriched at the expense of Quartix.

50. Under principles of good conscience, Defendants are jointly and severally liable to Quartix for an amount equal to $762,429.90, plus interest, costs and attorneys' fees.

51. By reason of the aforesaid, Quartix is entitled to a judgment against Defendants in an amount equal to $762,429.90, plus interest, costs and attorneys' fees.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants as follows:

i. For an amount equal to $762,429.90 for MXM's breach of contract claim in connection with the Agreement, plus interest, costs and attorneys' fees;

ii. For an amount equal to $762,429.90 for Issagholi's breach of contract claim in connection with the Guaranty, plus interest, costs and attorneys' fees;

iii. For an amount equal to $762,429.90 for Quartix's claim for unjust enrichment against the Defendants, plus interest, costs and attorneys' fees; and

iv. For all other and further relief as this Court deems just and proper.

Dated: February 20, 2024
New York, New York

**LAZARUS & LAZARUS, P.C.**
*Attorneys for Plaintiff*

By: __*/s/ Harlan M. Lazarus*___
Harlan M. Lazarus, Esq.
240 Madison Avenue, 8th Floor
New York, New York 10016
(212) 889-740
hazarus@lazarusandlazarus.com