```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/7/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QUARTIX FINANCE INC., | |
| Plaintiff, | |
| -against- | |
| MXM NV INC. AND ADDE ISSAGHOLI, | |
| Defendants. | |

REPORT AND RECOMMENDATION
ON DAMAGES INQUEST

24-CV-1283 (JGK) (KHP)

**TO: THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Quartix Finance Inc. ("Quartix") commenced this action against Defendants MXM NV Inc. ("MXM") and Adde Issagholi ("Issagholi") for breach of contract. The Complaint seeks an award of damages pursuant to a Customer Services Agreement (the "Agreement"), as well as expenses, attorneys' fees[1], costs, and interest. Upon Plaintiff's application and in light of Defendants' failure to appear in or otherwise defend against this action, on July 22, 2024, the Honorable John G. Koeltl granted Plaintiff's motion for a default judgment. The matter was then referred to the undersigned for an inquest on damages.

For the reasons stated below, I recommend that the Court enter judgment for Plaintiff in the amounts of (1) $309,677.75, (2) $380,328.63, and (3) $72,423.56 for Defendants' breach of contract. I further recommend that the Court award pre-judgment interest on (1) $309,677.75 at a rate of twenty-one percent (21%) from January 9, 2024 to the date of entry of judgment; (2) $380,328.63 at a rate of twenty-one percent (21%) from January 11, 2024 to the

---

[1] On April 30, 2025, Plaintiff withdrew its application for attorneys' fees and costs. (ECF No. 48 at ¶ 31) I, therefore, make no recommendation with respect to payment of attorneys' fees and costs.

1

date of entry of judgment; and (3) $72,423.56 at a rate of twenty-one percent (21%) from January 22, 2024 to the date of entry of judgment. Finally, I recommend the Court award post-judgment interest pursuant to 28 U.S.C. § 1961.

## **BACKGROUND**

It is well-settled that in light of Defendants' default, Plaintiff's allegations, with the exception of those related to damages, are accepted as true. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Accordingly, the following facts are established as a result of Defendants' default:

Quartix is a corporation organized under the laws of the State of Delaware with its principal place of business in North Carolina. (ECF No. 1, Complaint or "Compl." ¶ 2) Quartix maintains a cloud-based supply chain finance platform that enables the suppliers of participating customers to exchange invoice information and submit notices relating to approvals for payment, offers to purchase and sell, and transfers of supplier invoices (the "Platform"). (*Id.* at ¶ 9) The Platform also allows customers to request that Quartix make advances to them to allow them to pay their invoices based upon the invoice information they supply to Quartix. (*Id.*) Customers to whom Quartix makes advances unconditionally agree to repay those advances on the maturity dates specified on the Platform. (*Id.*)

Defendant MXM is a corporation organized under the laws of the State of Nevada with its principal place of business located in North Las Vegas, Nevada. (*Id.* at ¶ 3) Defendant Issagholi is an individual who is a citizen of the State of Nevada and, pursuant to his driver's

license, resides in Las Vegas, Nevada. (*Id.* at ¶ 4) Issagholi is the guarantor under the Agreement. (*Id.* at ¶ 5)

MXM executed the Agreement dated September 7, 2023. (*Id.* at ¶ 10) Issagholi executed the Guaranty annexed to the Agreement. (*Id.* at ¶ 20) The Guaranty made Issagholi the primary obligor to Quartix under the Agreement:

> [T]he undersigned irrevocably and unconditionally guarantees to Quartix, as a primary obligor and not merely as a surety, payment in full when due, whether by acceleration or otherwise, of any and all obligations, liabilities and indebtedness of the Customer to Quartix now or hereafter arising under or pursuant to said Customer Services Agreement (the "Obligations"). This is a guarantee of payment when due, and not of collection, and the undersigned waives any right to require that any resort be had by Quartix to the Customer, any other guarantor of the Obligations or any collateral securing the Obligations.

(Agreement – Guaranty, ECF No. 1-1 at p. 11)

The Agreement provides that Defendants may, among other things, request advances to pay approved invoices or instruct Quartix to pay approved invoices:

> <u>Services Available to Customer</u>. The Customer may at any time use the Platform to take any of the following actions that have been authorized by Quartix and made available to the Customer on the Platform: (i) post Invoices, (ii) approve posted Invoices for payment in whole or in part, (iii) request that the maturity date of any Approved Invoice be extended, (iv) request Advances to pay Approved Invoices, (v) instruct Quartix to pay Approved Invoices, and (vi) employ any other services then available to it on the Platform.

(ECF No. 1 at ¶ 12; Agreement, ECF No. 1-1 at p. 2) In connection with an advance, the Agreement sets forth certain terms and conditions, including that Defendants accept the interest rate and maturity date quoted in the Platform for the requested advance:

> <u>Advances</u>. (a) Quartix may, at the Customer's request but in Quartix's sole discretion, (i) pay Approved Invoices specified by the Customer or (ii) make advances to the Customer to pay such Approved Invoices (each such payment or

3

> advance herein called an "Advance" and the date on which Quartix makes such payment or advance herein called the "Borrowing Date" of such Advance). (b) Payments of Approved Invoices may be made by Quartix to the relevant Suppliers using such deposit accounts and payment systems as Quartix may determine in its sole discretion. Advances to the Customer to pay Approved Invoices may be made by Quartix by wire transfer or automated clearinghouse credit in accordance with the [terms set forth in the Agreement]". (c) Any request that Quartix make an Advance (a "Borrowing Request") shall be made by the Customer on the Platform, in accordance with the Platform Procedures, and shall (i) identify the Approved Invoices the Customer wishes to pay with the proceeds of the requested Advance, (ii) state the amount of the requested Advance (provided that no Advance shall exceed the Approved Amount of the Approved Invoices identified in such Borrowing Request), (iii) accept the interest rate and Maturity Date quoted on the Platform for the requested Advance, and (iv) provide such other information as the Platform may require.

(*Id.* at ¶ 13, ECF No. 1-1 at p. 4)

The Agreement also provides that Defendants acknowledge and agree they have an absolute, irrevocable, legal, valid, and binding obligation to repay each advance and that any outstanding principal amount will bear interest from the date it is made until it is paid in full at the rate quoted on the Platform, including pre- and post-judgment default interest:

> (d) Each Advance shall be due and payable on demand and, if no demand is made prior thereto, on the Maturity Date selected by the Customer for such Advance in accordance with the Platform Procedures. The Customer acknowledges and agrees that it shall have an absolute, irrevocable, legal, valid and binding obligation to repay each Advance to Quartix on demand or, in the absence of a demand, on its Maturity Date, without any defense, offset or counterclaim of any kind.
> (e) The outstanding principal amount of each Advance shall bear interest from the date it is made until it is paid in full at the rate quoted on the Platform and accepted by the Customer when it submitted the Borrowing Request for such Advance. Interest on each Advance shall be payable on the date Quartix demands payment thereof or, in the absence of such demand, on the Maturity Date of such Advance.
> (f) Notwithstanding the foregoing, in the event that Customer fails to make any payment in respect of principal or interest on any Advance on the date it is due, it shall pay to Quartix, promptly upon demand, interest on the past due amount

4

from its due date until it is paid in full at the default rate specified on the Platform (which rate shall apply after as well as before judgment).

(*Id.* at ¶ 14, ECF No 1-1 at pp. 4-5)

The Agreement further provides that in the event of default, all amounts past due shall, if Quartix so chooses, accrue interest at a rate equal to the default rate specified on the Platform until paid in full and that the rate shall apply pre- and post-judgment:

> Events of Default. If the Customer (i) fails to make any payment, or to cause payment to be made, when due under this Agreement and such failure is not remedied within 3 Business Days, (ii) fails to make payment on any other indebtedness when due at maturity, by acceleration or otherwise, (iii) breaches any representation, warranty, covenant or any other obligation hereunder, (iv) becomes insolvent, or ceases operations, or (v) any bankruptcy, reorganization or insolvency proceedings are instituted by or against the Customer (each of the foregoing, an "Event of Default"), then all amounts payable pursuant to this Agreement shall, upon notice from Quartix, become immediately due and payable; provided however if a default occurs under clause (v) of this Section, such amounts shall become immediately due and payable without notice or any further action by Quartix. Upon the occurrence of an Event of Default, all amounts past due hereunder (including any accelerated amounts) shall, if Quartix so chooses, accrue interest at a rate equal to the default rate specified on the Platform until paid in full (which rate shall apply after as well as before judgment) and (ii) the Customer shall cooperate with Quartix in remedying such default including executing such additional instruments and documents as Quartix may request.

(*Id.* at ¶ 16, ECF No 1-1 at p. 5)

Finally, the Agreement also provides that it shall be governed by and construed in accordance with New York law:

> Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its conflict of laws rules other than Sections 5-1401 and 5-1402 of the New York General Obligations Law.

(*Id.* at ¶ 17, ECF No 1-1 at p. 6)

On September 11, 15, and 25, 2023, Quartix made three separate advances to MXM in the principal amounts of $288, 960.00, $355,285.00, and $77,240.00, respectively. (ECF No. 42 at ¶ 6) Quartix and MXM negotiated a twenty-one percent (21%) interest rate per annum for the advances, which began accruing on the date the advances were made. (ECF No. 42 at ¶¶ 11-12; ECF No. 48 at ¶¶ 23-28) This interest rate was also the one quoted on the Platform. (ECF No. 41 at ¶¶ 28 and 30) The advances had initial maturity dates of November 6, 9, and 20, 2023, respectively. (ECF No. 48 at ¶ 5) MXM made a sole payment in the amount of $10,064.17 against the third advance. (*Id.* at ¶ 22) Thereafter, after the first advance became due, Quartix extended the initial maturity dates for all three advances to January 9, 11, and 22, 2024, respectively. (*Id.* at ¶¶ 7, 17) As of the extended maturity dates of January 9, 11, and 22, 2024, MXM owed $309,677.75, $380,328.63, and $72,423.56[2], respectively. (ECF No. 48-5) MXM failed to repay the advances on the extended maturity dates of January 9, 11, and 22, 2024 and was, therefore, in default on those dates. (ECF No. 48 at ¶ 17) On January 26, 2024, Quartix sent a demand notice (the "Default Notice") to MXM and Issagholi notifying them of their default under the Agreement, the total amount owed, and a cure date (i.e., January 31, 2024). (ECF No. 42 at ¶ 28) On February 5, 2024, Defendants acknowledged receipt of the Default Notice but failed to respond and have refused to make payment of the amounts that remain due and owing, plus interest. (*Id.* at ¶¶ 30-32)

---

[2] This number reflects the payment in the amount of $10,064.17 made by MXM against this advance.

**PROCEDURAL HISTORY**

On February 21, 2024, Plaintiff filed the Complaint against Defendants for breach of contract of the Agreement and Guaranty and unjust enrichment, seeking payment of the amount due and owing, plus interest, costs and attorneys' fees. *Id.* On April 18, 2024, Plaintiff filed an Affidavit of Service indicating that Issagholi was served by affixing a true copy of the service package containing a Summons, Complaint, Exhibits and Civil Cover Sheet to the doors of each of his last known residences and by mailing a copy of the service package by first class mail to his last known residence. (ECF No. 9) On May 1, 2024, Plaintiff filed a second Affidavit of Service indicating that MXM and Issagholi were served by mailing a copy of the service package via Federal Express Overnight Delivery to Defendants' last known addresses. (ECF No. 11) On May 7, 2024, Plaintiff filed a third Affidavit of Service indicating that MXM was served by delivering a copy of the service package to an entity and individual authorized to accept service on its behalf and mailing service packages to Defendants. (ECF No. 12) On May 31, 2024, Plaintiff filed a fourth Affidavit of Service indicating that MXM was served by mailing a copy of the service package via Federal Express Overnight Delivery to its last known address. (ECF No. 19)

Because Defendants failed to appear in this action and failed to file an answer or other response to the Complaint, a Clerk's Certificate of Default was entered on May 28, 2024 as to Issagholi and on June 25, 2024 as to MXM. (ECF Nos. 17 and 27) On May 2, 2024, the Court issued an Order to Show Cause, directing Defendants to respond in writing to the order by July 19, 2024, and if necessary, for Plaintiff to reply by July 26, 2024, as well as directing Plaintiff to

7

serve a copy of the order to Defendants. (ECF No. 35) On July 8, 2024, Plaintiff filed an Affidavit of Service indicating that Defendants were served with copies of the Order to Show Cause. (ECF No. 36) Defendants failed to respond to the Order to Show Cause. On July 22, 2024, the Court entered a Default Judgment for Plaintiff against Defendants, in an amount to be determined at inquest, and referred the matter to the undersigned for the damages inquest. (ECF Nos. 37 and 38)

## DISCUSSION

### *I. Proof of Damages*

Rule 55 of the Federal Rules of Civil Procedure governs judgments against a party that has failed to plead or otherwise defend itself in an action. *Au Bon Pain Corp.*, 653 F.2d 61 (defendant's ongoing failure to appear supported failure to plead for the purpose of entry of default). A default constitutes an admission of all well pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, a plaintiff still bears the burden of establishing its entitlement to recovery and thus must substantiate its claims with evidence to prove the extent of their damages. *Id.* Thus, even when a defendant has defaulted, a substantive analysis of the alleged claims is required to determine whether the plaintiff may be awarded damages, and proof of damages is required. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).

On July 24, 2024, the undersigned issued an order directing the parties to submit proposed findings of fact and conclusions of law concerning all damages and any other

8

monetary relief permitted under the entry of default. (ECF No. 40) In the order, the parties were advised that the Court may conduct the inquest based solely upon the written submissions of the parties unless a party advanced a reason why the inquest should not be conducted on the written submissions alone. *Id.* (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). On August 22, 2024, Plaintiff submitted materials in support of the inquest, including proposed findings of fact, supporting affidavits, and other documentary evidence of damages. (ECF Nos. 41-43) On April 30, 2025, Plaintiff submitted supplemental materials in support of the inquest in response to a Court order requesting said materials on April 9, 2025. (ECF Nos. 45 and 48) Defendants did not make any appearance or respond to Plaintiff's submissions. Neither party requested a hearing or otherwise opposed disposition of this action based on the papers.

### II. Breach of Contract

The breach of contract in this action relates to the terms of the Agreement and Guaranty between Quartix and Defendants MXM and Issagholi. Under New York law, a party alleging a breach of contact must prove the following: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Invests. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).

Plaintiff has established the necessary elements of a breach of contract claim. Based on a review of the allegations in the Complaint and Plaintiff's affidavits, Defendants executed the

9

Agreement and Guaranty annexed to the Agreement, and in so doing agreed to be bound by their terms and conditions.  (ECF No. 1 at ¶¶ 10 and 20)  Plaintiff has provided affidavits by its CEO Dror Polak and related spreadsheets, containing the specific amounts advanced to Defendants and a breakdown of the interest accrued over time since the date the advances were made.  (ECF Nos. 42 and 48)  Plaintiff has also provided a copy of the Default Notice sent to Defendants demanding payment of the amount due and owing, which Defendants refused to pay.  (ECF No. 1-2 at pp. 1-2)  Plaintiff has therefore established the existence of a contract. Similarly, Plaintiff has demonstrated that it performed its role in the contract by advancing the funds to Defendants and sending Defendants the Default Notice demanding payment of the amount owed.  (*See id.*)  In failing to pay the amount owed, Defendants breached the part of the Agreement which provides, "[e]ach Advance shall be due and payable on demand []. The Customer acknowledges and agrees that it shall have an absolute, irrevocable, legal, valid and binding obligation to repay each Advance to Quartix on demand[.]"  (ECF No 1-1 at pp. 4-5) Thus, Plaintiff is entitled to damages as provided for in the contract and under New York Law.

### III. Damages

The Agreement is governed by New York Law.  (*See* ECF No. 1 at ¶ 17, ECF No 1-1 at p. 6) Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms."  *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007).  Pursuant to N.Y. C.P.L.R. § 5001(a), pre-judgment interest "*shall* be recovered upon a sum awarded because of a breach of performance of a contract."  *Maricultura Del Norte, S. de R.L. de C.V. v. Umami*

*Sustainable Seafood, Inc.*, 769 F. App'x 44, 52 (2d Cir. 2019) (emphasis in original) (holding "N.Y. C.P.L.R. § 5001(a) speaks in mandatory language."). Finally, 28 U.S.C. § 1961 provides for an award of post-judgment interest "on any money judgment in a civil case recovered in a district court." *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008).

Thus, the Court looks to the terms of the Agreement to calculate Plaintiff's damages. *JDF Cap. Inc. v. Apptigo Int'l, Inc.*, 2018 WL 2945622, at *3 (S.D.N.Y. May 8, 2018), *report and recommendation adopted*, 2018 WL 2943764 (S.D.N.Y. June 12, 2018). The Agreement provides, in relevant part, that "[i]f the Customer [] fails to make any payment, or to cause payment to be made, when due under this Agreement and such failure is not remedied within 3 Business Days, . . . then all amounts payable pursuant to this Agreement shall, upon notice from Quartix, become immediately due and payable . . ." (ECF No. 1-1 at p. 5) Further, "[a]ny request [by a Customer] that Quartix make an Advance [] shall . . . accept the interest rate and Maturity Date quoted on the Platform for the requested Advance." (*Id.* at p. 4) "Each Advance shall be due and payable on demand . . . [and] [t]he Customer acknowledges and agrees that it shall have an absolute, irrevocable, legal, valid and binding obligation to repay each Advance to Quartix on demand . . ." (*Id.*) "The outstanding principal amount of each Advance shall bear interest from the date it is made until it is paid in full at the rate quoted on the Platform . . ." (*Id.*) "[I]n the event that Customer fails to make any payment in respect of principal or interest on any Advance on the date it is due, it shall pay to Quartix, promptly upon demand, interest on the past due amount from its due date until it is paid in full at the default rate specified on the Platform (which rate shall apply after as well as before judgment)." (*Id.* at pp. 4-5) The

11

applicable rate of interest quoted on the Platform is twenty-one percent (21%) per annum. (ECF No. 41 at ¶¶ 28 and 30)

By the plain terms of the Agreement, Plaintiff is entitled to the principal amounts of $309,677.75, $380,328.63, and $72,423.56, plus pre-judgment interest on those amounts at a rate of twenty-one percent (21%) from January 9, 11, and 22, 2024, respectively, to the date of entry of judgment, along with post-judgment interest.

### *IV. Pre- and Post-Judgment Interest*

Under New York law, "[i]nterest is generally mandatory" upon a sum awarded for breach of contract. *Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir. 2015) (citing N.Y. C.P.L.R. §§ 5001(a) and 5004). "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. C.P.L.R. § 5001(b). Plaintiff claims that the cause of action existed as of January 9, 11, and 22, 2024 – the default dates for each of the three advances. The parties agreed to a twenty-one percent (21%) interest rate per annum, accruing on the date each advance was made. Accordingly, I respectfully recommend an award of pre-judgment interest at a rate of 0.00058333% per day (based on the twenty-one percent (21%) interest rate per annum) from January 9, 11, and 22, 2024, respectively, through the date of entry of judgment.

Post-judgment interest is similarly mandatory pursuant to 28 U.S.C. § 1961. *See Bleecker v. Zetian Sys., Inc.*, 2013 WL 5951162, at *2 (S.D.N.Y. Nov. 1, 2013). Accordingly, I

respectfully recommend post-judgment interest at the statutory rate calculated by the Clerk of Court pursuant to 28 U.S.C. § 1961.

## **CONCLUSION**

For the reasons stated above, I respectfully recommend that Plaintiff be awarded: (a) principal damages in the amounts of $309,677.75, $380,328.63, and $72,423.56, representing Plaintiff's actual damages; (b) pre-judgment interest on such damages, at the interest rate of twenty-one percent (21%) from January 9, 11, and 22, 2024, respectively, through the date of entry of judgment; and (c) post-judgment interest pursuant to 28 U.S.C. § 1961.

Dated: May 7, 2025
      New York, New York

Respectfully submitted,

_____
KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**Plaintiff shall have fourteen days and Defendants shall have seventeen days from this date to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to this Report and Recommendation.  If Defendants file written objections to this Report and Recommendation, Plaintiff may respond to the objections within fourteen days after being served with a copy.  Fed. R. Civ. P.72(b)(2).  If Plaintiff files written objections, Defendants may respond to the objections within seventeen days.**

**Objections and responses to objections shall be filed with the Clerk of Court, with courtesy copies delivered to the Hon. John G. Koeltl at 500 Pearl Street, New York, NY 10007-1312, to the chambers of the undersigned magistrate judge, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any request for an extension of time to file objections must be directed to Judge Koeltl.  Failure to file timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**